Case 16-2243 and 16-2395 USA v. Kenton Taylor. Oral argument, 15 minutes per side. Ms. Howard for the appellant, cross-appellee. Good morning, and may it please the Court. Good morning. Do you wish to reserve some rebuttal time? I do, Your Honor. I would like to reserve five minutes of rebuttal time. Okay, that would be fine. You may proceed. My name is Sarah Howard. I represent the appellant, defendant, Mr. Kenton Taylor. We filed an appeal in this case on the following issues, whether Mr. Taylor should have been given a new trial because of evidence of impeachment and bias withheld by the government, and whether the District Court properly applied a firearm enhancement when sentencing Mr. Taylor. On those issues, we ask the Court to reverse and remand for further proceedings. First, I'll address the issue of whether the motion for a new trial should have been granted in this case. In this matter, after the trial, we found out that the key witness in the case against Mr. Taylor, whose name is Ronald Hemphill, had an extensive prior history with the Lansing Police Department. You didn't know that until after trial? We knew that there was some rumors on the street, so to speak, that he had been a suspect in the murder of a friend of my client. We asked the government for information about that. The government declined to provide any information. But didn't Mr. Taylor actually offer Mr. Hemphill's name to the law enforcement people as a possible suspect? Am I wrong about that? He did. He was aware? He was aware, and that's how I knew to ask about the matter in the first place. But we didn't have confirmation if Lansing Police Department felt that he was a suspect or any other matters. We also didn't know that Lansing Police Department documented in its files that it felt that he was not a credible witness in that case, that he had lied to them. There's extensive documentation in the file that says we think he's lying to us, not just based on the polygraph, but based on inconsistencies in what he had told them and inconsistencies in the alibi that was given by his wife. And that we were not able to find out prior to trial. And you filed a motion prior to trial to get that information? I did not file a motion prior to trial. Why not? Well, because at that point all I had was he was suspected of a murder involving a friend of my client. I had nothing more besides that to take to the court. I tried to ask him questions about it at trial, and the government objected, and the court sustained the objection. And I had nothing further to offer the court in terms of anything else from that case because I didn't have any information about it after the government, and I didn't have enough, I felt, at the time to go to the court. Also, we had this discussion about Mr. Hemphill very close in time to the start of the trial, within two weeks, because that's when I learned Mr. Hemphill's name. So there was simply not adequate time before the trial to ferret out this issue any further than we did. And when I tried to ask about it, I didn't get very far. When we had a discussion with the judge at Sidebar about the issue, the attorney for the government, Mr. Cortade, told the court and told me that Mr. Hemphill had reported to him that he had helped the police in that matter. So I, again, didn't have anything further to be able to argue to Judge Neff that this was something that ought to come in, that there was evidence of bias or of his unsuitability as a witness that I would have asked not only him about, but that I would have asked the Lansing police witnesses about as well. You frame this as a Brady violation? Yes, Your Honor, it is a Brady violation. All right, so you say that they had this Lansing City Police file, the U.S. attorney had it in their possession? Is that your claim? I believe that they are at the very least responsible for knowing it, because they were working with both Lansing Police Department and the ATF. They didn't have the file in their possession? I don't know that, Your Honor. I mean, usually a Brady violation is evidence that they've withheld, which means that they have. Or that they're responsible for having. And if an investigating agent that is working with the government has the information, besides which I asked about it prior to trial, and I know that we know there had been some discussion between the government and the witness about it because Mr. Quartet said they'd had some discussion about it. If you had had the file at trial, you would have used information from the file to impeach him? To impeach him, but also I... In what ways would you have used it to impeach him? Well, I would have asked him about the fact that he needed to be concerned that he could be charged with this crime at some point in the future. And when Lansing Police Department approached him about acting as a confidential informant, contrary to the order of the district court, that he probably felt like he needed to cooperate with whatever he was being asked to do. And that he knew exactly what it was he was being asked to do. But I also would have asked the Lansing Police witnesses about why they... further questions about why they chose this particular individual, given that their own files had called him a liar in the past, why they would trust somebody like this. We got into that a little bit with the fact that this was an individual who was ordered under a district court standing order not to participate as a confidential informant without permission of the court, and they still use this person anyways. But I would have asked Lansing Police witnesses about that issue. I probably also would have called the handler of the confidential informants for LPD, who I did not call at the time, because that was the person who... There was significant testimony he had vetted the file of this individual and felt that he was an appropriate confidential informant. One of our themes of the case was that the government's investigation wasn't adequate, that they had spent 18 months and they hadn't done any surveillance of any kind. They had done a couple of drive-bys. Basically somebody had drove by in a cruiser and looked to see if anything looked suspicious over the course of 18 months. They had done some trash pulls, but when those didn't show anything, they failed to document them. And all they had done was collect statements from people, and then they had done controlled buys with individuals who then later said they were connected to my client. So one of the overarching themes was not enough was done to obtain more verifiable evidence than statements from people who obviously need to please the government at that point when they themselves have been caught with drugs. So that would have significantly aided in that theme that we had in the defense. The other issue here is that Mr. Hemphill was the only witness who could connect by his testimony my client to any quantity of heroin in this case. So he brought back heroin from a controlled buy and said my client had delivered this quarter gram of heroin to him, and here's the heroin that was shown to the jury. He's also the only one not under indictment in this case. So they put forward the story about he's just decided to do the right thing, he is not getting any sentencing benefit from it. And we know that the jury found his testimony at least somewhat questionable in that they refused to vote to convict on one of the two ways in which they could have convicted on count for the possession with intent to distribute when it relied only on his testimony. So there were two instances where they attempted controlled buys with Mr. Hemphill. The first instance Mr. Hemphill brings back a quarter gram of heroin and says I was in an apartment full of people with Mr. Taylor and I got this from Mr. Taylor. The second instance he says he tried to buy 30 grams of heroin from my client, the deal didn't happen, he comes back with nothing. And on that the jury refused to vote to convict on the verdict form on that second event when there was nothing to back up Mr. Hemphill's statement. They also sent a question out to the lawyers and to the judge saying is Mr. Hemphill's testimony the only evidence to back that up, and we sent back a response saying yes that's it. And they refused when it was just his testimony. So they clearly had some question about him to begin with. So to the extent I could have pointed out this issue, both in terms of he's always got to be concerned he could be charged with this murder, even though it's a cold case he could always be charged with it, and two, why would the Lansing police use this guy when they have documented in their files they think he's a liar, he's clearly got past history with this particular defendant. He must have appeared in some way less than credible to the jury for them to refuse when it was just his testimony on those issues. So for those reasons... The previous, the cold case murder or whatever it was, was that ever tried? Did anyone ever get tried for that? No, Your Honor. So it's just investigation that occurred at the time. Correct, Your Honor. That's what you're trying to get. Yes, Your Honor. Now on the issue of whether the district court properly applied the firearm enhancement, the testimony was not sufficient even under the standard necessary for sentencing to apply that firearm enhancement. When you look at the testimony, it was based on Mr. Lockridge and Mr. Ray, two co-defendants. Mr. Lockridge acknowledged that his trial testimony differed in a significant and important respect from the statement he'd made to the ATF agent. I see my time is up, so I will sit down. Okay. Thank you. Thank you. Good morning. May it please the Court. Joel Fossen on behalf of the United States. We submit, Your Honors, that the United States was, or excuse me, the district court was correct in denying Taylor's motion for a new trial. The file that we are talking about here today, Your Honors, is a 2002 cold case murder file where there was no ongoing active investigation by the Lansing Police Department. I feel it's necessary to clear up some of the statements that my adversary made about the record because I do believe that they're not completely accurate. This issue was raised by the appellant here and her client on the morning of the final pretrial conference. This cold case file that's at issue was not in the U.S. Attorney's Office's possession. When I was contacted by counsel here about the fact that he may have been a suspect, Mr. Hemphill, in this 2002 murder, I asked her how is that relevant to impeachment on a heroin conspiracy that began in 2012. I further stated if this is something you wish to pursue, we should bring this up at the final pretrial conference later this afternoon. Judge Neff, down in the U.S. District Court for the Western District of Michigan, had an in-chambers conference where this issue was raised. Judge Neff indicated to counsel here during that in-chambers conference that she did not believe that this material was relevant, and the matter was not raised further until counsel attempted to cross-examine Mr. Hemphill about the fact that he was a suspect in this 2002 cold case murder. The trial went through. Mr. Taylor was convicted not only on the distribution charge, which did relate to a face-to-face that Mr. Hemphill had to get a tester quantity of heroin from him, but also on the conspiracy charge where there were 10 witnesses that testified against Mr. Taylor and said that Mr. Taylor was the leader of this conspiracy. And contrary to my adversary's assertions, it is not true that all of these witnesses that were at trial were under indictment. In fact, it was— Are you talking about prejudice or harmless— I am jumping to prejudice, Your Honor. So I just wanted to clear that up. Who had the file? Lansing Police Department had it. Are you responsible for giving it even if you didn't know about it or not? Well, the knowledge is imputed to the U.S. Attorney's Office. I will concede that. We have to put that aside. I mean, it's not logical, but that's the law, right? We have to put that aside. It is the law. But the issue, Your Honor, because this is a Giglio issue, so I do believe that it falls under the Brady umbrella, is whether or not this information was either exculpatory or impeaching. You gave us a lot of background that doesn't really go to that question. Right. I wanted to clear it up. I got that, but a lot of that doesn't control our answer here. So the answer, Your Honor— It's not exactly the issue that you want to lose on. Correct, and I'll go to that right now, Your Honor. I do believe that this material was absolutely not exculpatory because the fact that Mr. Hemphill was a suspect in this 2002 completely unrelated murder that was over a decade old, he was one of many suspects, it simply doesn't exculpate Mr. Taylor from leading a heroin conspiracy in 2012. Why wouldn't a jury think that he was less likely to tell the truth if he was trying to placate or please the authorities? That assumes, Your Honor, that there was an active, ongoing investigation. And when we went back to the Lansing Police Department, they had this file in off-site storage. We produced, prior to trial, Mr. Hemphill's— Did the court rely on this, that it was all such a cold case that he couldn't have had that? That is correct, Your Honor. In the findings that the district court made on the motion for new trial, when Mr. Taylor had the cold case file, the district court determined that this was so far afield that these issues were not even relevant to impeachment or bias. Mr. Hemphill himself may not have known how cold the case was, I guess is the argument. It was real cold over in the police department, but maybe he was worried. I guess that's the argument. How do you deal with that? That is possible, but that gets to Mr. Hemphill's knowledge, and it really raises the issue of the government's burden of producing unrelated police— any type of police contact a witness may have had, no matter how remote, attenuated, or irrelevant to the existing conspiracy. What underlies Mr. Taylor's argument— What kind of deference do we give to the district judge for this kind of a determination? It's an abusive discretion standard, but the court has the authority to determine de novo the issue of whether there was a Brady violation. Well, that's the issue here, though, right? Correct. And our argument is that it was absolutely not a Brady violation because— Because it was so old and cold. Because it was so old, Your Honor, it was so cold, and I'm confounded how Mr. Taylor could take material from a cold case file and use that to try to impeach Mr. Hemphill. What about the fact that the elements of that old file, which suggested that they didn't believe Hemphill and that he wasn't a true— And I would like to make a clarification on that. That file isn't even in the record here before us, Your Honor. I would submit that it's Mr. Taylor's burden to have made that part of the record, and I think that's very telling because the one piece of material that Mr. Taylor did incorporate into this record, I think it's docket 264-1. He had the whole thing, he just didn't present it to Judge Neff. That is correct. It was never presented to Judge Neff, and I have reviewed that file. And these claims that the Lansing Police Department didn't view Mr. Hemphill as credible are not akin to the case that— You say they're not akin. They're not in the record is what you're saying. No, what I'm saying, Your Honor, is that the issue about his credibility finding, that was a failed polygraph, which the district court addressed below. And the failed polygraph was regarded to, did he commit the murder or not? It wasn't any indication that he wasn't credible other than the failed polygraph? That is correct, Your Honor. That is what I wanted to clarify. Neff clearly wasn't going to allow polygraphing. He was not going to allow the polygraph, and that's in fact based on this court's precedent that polygraphs are inadmissible into evidence. Or even reluctance to take one, I suppose. Correct. And he volunteered, and that is for good reason. It's because it usurps the jury's ability to make determinations on credibility issues. So Judge Neff did deal with that. But I do believe it's very telling here that none of this cold case file that Mr. Taylor is now making statements about is currently in the record when he could have made that part of the record. And that's because there's nothing there. Mr. Taylor knew on the morning of the final pretrial conference, he first raised this issue, that Mr. Hemphill was a suspect. The only other evidence that is, or information that's come out of this motion for new trial and this whole go-around with the cold case file is that Mr. Hemphill was a suspect. And that's not proper impeachment under either Rule 608 or 609. The government does concede that the district court does have to allow some showing of bias, but that's tempered by Rules 402 and 403 on the probative versus prejudicial way and the issues of relevance. And here it just was simply not relevant to whether or not Mr. Hemphill was lying on the stand in trial or whether Mr. Hemphill was lying when he said, I received a tester quantity of heroin from Mr. Taylor. Beyond that, it doesn't eliminate the cases that my adversary here cites. For example, all of the cases that are cited dealt with a misstatement that a key government witness made while on the stand. So it goes to issues of credibility in impeachment. This is an issue that is completely unrelated to the underlying case and polygraphs are simply inadmissible into evidence. So for all of those reasons, Your Honors, I would respectfully submit that this was not a Brady violation because the information contained in that cold case file was neither exculpatory nor could it be used as impeachment evidence as the district court correctly ruled. Thank you. Going to the firearms enhancement. Could I ask if it's okay with my colleagues for you to proceed to your cross appeal at this point? Certainly, certainly. The United States contends that the district court was clearly erroneous in finding that Mr. Taylor should only be responsible for 630 grams of heroin as its drug quantity finding. And the reason for that is the district court clearly invited appeal on this issue. That doesn't make it necessarily correct that it should be overturned, but the district court, and I'm quoting from the record, I believe, found it unconscionable that the court should attribute the cut that gets added to the heroin. Why isn't that a policy difference with the guidelines? It's not a policy difference with the guidelines, Your Honor. That's from Chapman v. United States, which is a 1991 Supreme Court case, which involved LSD blotter paper. Why isn't there a policy difference with that? Chapman's binding Supreme Court precedent, Your Honor. That was back when the guidelines were mandatory, right? It did come out when the guidelines were mandatory. And this is purely guidelines issue, right? No, it's not, Your Honor. The Supreme Court was interpreting the drug standards. In our case, in this case, it's just guidelines, right? We're just talking about the guidelines. No, Your Honor. I'm stating that. Minimum sentence? Statutory sentence that we have here? Statutory minimum? There was a 10-year mandatory minimum, Your Honor. Yes. We did charge Mr. Taylor with a 10-year mandatory minimum. What was the sentence that was imposed? It was 151 months. So there's no problem with the statutory minimum here? There is no problem with the statutory minimum. So what you're complaining about is the wrongful calculation of the guidelines? Correct. Because the statutory minimum is met, correct? The statutory minimum is met. You're relying on a case that was held when the guidelines were mandatory and a varying from the guidelines was not permitted to say that the district court here improperly varied from the guidelines. In what looks to me like a policy difference, she just doesn't think that this is a good rule, even though that's the rule in the guideline. What's going on? I mean, correct me where that's not the case. Isn't that the case? No, the case, Your Honor, is that Chapman is still binding because I don't believe Chapman was… It's binding for what it held, and it held what it held within the context of the law at that time. I believe it was interpreting the law based on the actual drug statutes. It was interpreting the statutory law, which isn't at issue in this case, and it was interpreting the guideline, which was mandatory back then. And the guideline still does provide. The guideline still provides it, but it's not mandatory any longer. So all I'm asking is, assuming you're right that she misread the guidelines, not misread the guidelines, but declined to follow what the guidelines told her to do because she thought it was unconscionable, which sounds like a policy difference, what's wrong with upholding that on the theory that she disagreed with the policy underlying it? If she's disagreeing with what the guidelines provide, she's still obligated, I believe, under this circuit's precedent to correctly calculate the guidelines, which she declined to do. Isn't the error, though, of miscalculating the guidelines harmless here? I mean, I'm looking at page 56 of the sentencing transcript, and Judge Neff says this. Now, I want to make it clear also that while the original scoring of this case resulted in an advisory range of life for Mr. Taylor, I would not have imposed a life sentence regardless of the rulings on the objections. I would have varied considerably and probably down to the level where we are now. I think that a sentence of life in this case was clearly unnecessary to meet the statutory directive of the sentence, which is sufficient but not greater than necessary to achieve those goals, which I have laid out, the goals of punishment, respect for the law, deterrence, protection of the public. There, she is saying that regardless of the scoring of the guidelines, I would have varied and imposed this sentence. I mean, this is classic harmless error in the scoring of guidelines, is it not? Your Honor, it is, except she didn't vary. She miscalculated the guidelines. Well, she uses the word varied right there. Regardless of rulings on the objections to the scoring of the guidelines, I would have varied. So she is saying I would impose this sentence irrespective of the scoring. Don't you read it that way? You can certainly read it that way, Your Honor. Well, okay. It is your burden to establish reversible error here. I do, except the reason we are on appeal here and appealing this issue is because district judges are obligated to correctly calculate the guidelines. And I understand that if this case gets remanded, Judge Neff may impose the same sentence. But she could do that from a variance, not from making an erroneous finding on the guidelines. And the point I want to make here is the fact that the evidence in the record was that there were three to four grams of cut added to each gram of heroin sold. That was unrefuted. If we allow the district court to make their own findings contrary to the unrebutted facts in the case, that's clear error. And while they may be allowed to vary and say, I don't believe that's necessary for 3553A, it sets a bad precedent to allow district judges. It wouldn't state a bad precedent if we interpreted that to be the correct calculation under the guidelines, but that she varied from it for policy reasons. Correct. Then your law would be clear. I would have no dispute then if that was how it was handled. And so the forfeiture calculation, it was unrefuted that $80 a gram, $80 was given for every gram sold to Mr. Taylor. And so if the court decides to remand on that, we would ask for a recalculation. Thank you. Thank you, counsel. Ms. Howard? Yes, Your Honor. Just briefly on the issue of the filler quantity, I'm not going to say anything further about the issues that the court just asked Mr. Fossen about. I would mention, though, that it is indeed rebutted the reliability and accuracy of the testimony regarding the filler quantity. And Judge Neff also stated in several places in the record that she felt that the testimony was unreliable with respect to quantity of filler, and that was another reason why she was not adding filler quantity to the drug quantity, because she felt the testimony was too unreliable. And the case is that the government sites involved situations where there was much more concrete or objective not relying solely on testimonial evidence to come up with a number for filler, so it was more reliable. So that's an additional issue. She wouldn't mind if we said that she calculated them correctly, but she disagreed based on. I absolutely would not mind that, Your Honor. So to go back to the new trial issue, my opposing counsel is correct. We did talk about this at the final pretrial conference. I communicated with Mr. Fossen prior to that, asked for the information, and he declined. We talked about it with Judge Neff. Judge Neff indicated, I don't think that's enough for you to win a motion, so I chose to spend my time preparing for trial otherwise. And we asked for an evidentiary hearing from Judge Neff on these issues, and we were not given one. So we made, I filed some portions of what was in the police record. My position is that the police said not only did he fail the polygraph, but he also, we don't believe his story about his alibi, and we think what his wife said about his alibi, his then-wife said about his alibi, isn't very reliable either. So there were other bases besides the taking of the polygraph and the failing of the polygraph, which led them to believe that he was not credible. Also, I think it's important to note that when we're talking about ten witnesses who testified at trial, we're talking about law enforcement who investigated, so they have no firsthand knowledge other than what they've collected statements from other people and other evidence. We're talking about the three co-defendants, all of whom were caught with quantities of heroin and had to make deals. And then we're talking about Jacob Blatt, who said he was involved, was not charged. Judge Neff specifically found he was incredibly unreliable, not believable, said she was discounting everything he had to say. So that's the body of witnesses we're talking about in this particular case and why Mr. Hemphill is somewhat critical, given the people that they did have at their disposal and the lack of types of evidence that they had, specifically tying my client to both accounts in the case. I also want to highlight the fact that Mr. Foss' co-counsel on the case, Mr. Cortade, repeatedly emphasized that Mr. Hemphill was doing this, had to be doing it, because he was simply trying to be helpful. He was being paid only about $800. Nobody would do this just for $800. He's got no other reason besides coming in and wanting to do the right thing. He emphasized that any of the probation violations he had been punished for up to that point didn't involve telling mistruths. So further attempting to bolster the fact that this is a credible individual, people from the government believe him, you shouldn't care about the fact that the district court said he wasn't permitted to participate as a confidential informant. So there's a lot of bolstering by the government of this particular witness, all of which would have been a problem if the Lansing Police Department witnesses had to admit that they had found this person not credible in the past. And finally, I would say that Judge Knapp did not permit an evidentiary hearing on these issues, but this was a notorious cold case murder in Lansing. Two people were very violently murdered. It's never been solved, and I would find it difficult to believe the Lansing police wouldn't ever prosecute this if they had the ability to do so in the future. And I find it difficult to believe, but I can't prove it because I've never had an evidentiary hearing, that this issue wasn't discussed among Lansing investigators before they decided to use this individual. Given the fact that it was a friend of the defendant that they're using to go out and make controlled buys, that they found him to be lacking in credibility, and it's such a notorious case in the area that's never been solved. Is there evidence that they found him incredible other than by the polygraph? That they didn't believe his alibi testimony, and they didn't believe the then-wife's story about where he was at the time of the murder. And that's something we were never allowed to present to Judge Knapp because she denied an evidentiary hearing. And thank you, Your Honor. Okay, thank you, counsel, for your arguments this morning. And Ms. Howard, we would like to thank you. I understand you took this case under the Criminal Justice Act? I did, Your Honor. Okay. Well, that's a real service to Mr. Taylor and to our system at large, and we appreciate your willingness to take on the case. I appreciate that, thank you, Your Honor. With that, the case will be submitted, and you may adjourn court.